In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1006

JAN DONNAWELL,

*Plaintiff-Appellant,*

*v.*

DANIEL HAMBURGER, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 9074 — **George M. Marovich**, *Judge.*

ARGUED OCTOBER 1, 2015 — DECIDED OCTOBER 20, 2015

Before POSNER, MANION, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff is a stockholder in DeVry Education Group, Inc., a Delaware company that owns and operates a number of for-profit colleges and universities. See *DeVry Education Group,* www.devryeducation group.com (visited October 19, 2015). The suit is a shareholders' derivative suit against current and former members of DeVry's board of directors. Federal jurisdiction is based

on diversity of citizenship; the substantive law governing the suit is Delaware corporation law. The appeal is from the dismissal of the suit with prejudice.

An incentive plan adopted by the company in 2005 authorized the award of stock options to key employees, including the company's CEO. The plan limited the awards to 150,000 shares per employee per year. Yet the company granted Daniel Hamburger, who became its CEO in 2006, options on 184,100 shares in 2010, 170,200 in 2011, and 255,425 in 2012. Later that year the company, discovering its mistake, reduced each grant under the 2005 plan to 150,000 shares. But at the same time it allocated Hamburger 87,910 additional shares available under the company's 2003 incentive plan, which held shares that had been authorized to be allocated but hadn't yet been allocated. As a result Hamburger received options in 2012 far above the 150,000 that were the most he could receive under the 2005 plan. All these grants were proposed by the company's Compensation Committee to the company's independent directors (directors who are not also employees of the company). The independent directors approved the award of the additional shares to Hamburger. At the time, all the members of the Compensation Committee, and all but two of the members of the board of directors—one of them being Hamburger— were independent directors.

The plaintiff argues that the award is improper because only the company's Plan Committee, and not the Compensation Committee, was authorized to grant stock options under the 2003 plan. But there was no Plan Committee in 2012. The committee was to consist of members of the board of directors who were full-time, salaried employees of the com-

pany, and the only full-time, salaried employee of the company who was also a member of the board of directors was Hamburger. One supposes that he could have designated himself the Plan Committee, but he didn't, so there was no Plan Committee. In lieu thereof the grant of the 87,910 stock options was approved by the Compensation Committee, and in turn by the independent directors as a whole.

Approval by the Compensation Committee may have been fairer to stockholders than approval by the Plan Committee would have been. The Compensation Committee was made up exclusively of independent directors and its decisions were approved by the other independent directors. Independent directors might be more likely to question a generous award to the CEO than an employee would be ("I vote to deny my boss stock options"—not likely!).

Any decision by the Plan Committee, moreover, would have required approval of the Compensation Committee to be valid under the 2003 plan. The Plan Committee (when it exists) is thus the agent of the Compensation Committee; and what the agent can do, the principal can do. Furthermore, to obtain favorable tax treatment of performance-based compensation (which stock options are), a compensation committee consisting of at least two independent directors must determine the performance goals on which the compensation is based and certify that those goals have been achieved. 26 U.S.C. § 162(m)(4)(C). DeVry's Compensation Committee satisfied these criteria, the Plan Committee did not, and so the Compensation Committee must have had the final say over whether to award stock options to CEO Hamburger as otherwise the tax benefit would have been forgone.

It may help to think of the case in golf terms. A "mulligan" is the practice of allowing a player who has made a bad shot to do it over, and the bad shot isn't shown on his scorecard. Mulligans are commonly allowed in informal golf matches (as opposed to tournament matches, in which mulligans are never permitted) because no harm is thought to be done by them in such matches. Likewise no harm was done by allowing the Compensation Committee to do over, in effect, the erroneous grant of stock options under the 2005 plan, by invoking the 2003 plan, thus sinking the ball in the hole. The end result, from the shareholders' perspective, was no different from what it would have been had the first shot been a hole in one.

The plaintiff further argues that it was error to value the additional 2012 shares at their price in August of that year, when the initial grant (later realized to be forbidden) was made, rather than in December, the month in which the mistake was corrected by awarding shares available under the 2003 plan to Hamburger. But the award of shares in December was just a way of fulfilling the intention of the board and the Compensation Committee in making the initial grant to Hamburger in August, the grant that violated the 2005 plan. This is not a case in which shares granted at one time are later backdated to take advantage of market shifts. See *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007). The board was merely trying to keep the promise it had made in August by fulfilling it from a different bank of shares.

Against all this the plaintiff insists that the Delaware courts enforce corporate rules with absolute rigidity, indifferent to what is sensible, reasonable, or realistic, and therefore that the grant of stock options to Hamburger was inva-

lid—period—because it was not made by the Plan Committee. It quotes a decision of the Delaware Chancery Court which states that "contract interpretation starts with the terms of the contract. If the terms are plain on their face, then the analysis stops there." *Sanders v. Wang*, No. 16640, 1999 WL 1044880, at *6 (Del. Ch. Nov. 8, 1999). It's rather insulting to Delaware judges to interpret Delaware law on the assumption that the judges are mindless automata. Drafters of contracts are not omniscient; they are not gifted with exact knowledge of what the future holds. Literal interpretation can produce absurdities when applied to unforeseen occurrences, as when an ordinance forbidding unleashed dogs in a park is sought to be applied to a statue of Lassie.

The nonexistence of the Plan Committee created an unforeseen hole in the 2003 incentive plan, and the company plugged the hole by substituting the Compensation Committee—a substitution that might well make the shareholders better off, and would be very unlikely to make them worse off, than if there had been a Plan Committee. It makes no sense to allow a harmless error to drive a judicial decision— indeed the legal meaning of "harmless error" is an error that for lack of consequence is to be ignored by the court. We haven't found Delaware cases that invoke harmless error in regard to violations by boards of directors of compensation plans, but that can be of no comfort to the plaintiff in this case; for the Delaware case law requires, for liability to be imposed, that the board have violated an unambiguous term of the plan, and that didn't happen in this case. E.g., *Sanders v. Wang, supra,* 1999 WL 1044880, at *7.

A further point is that the 2003 plan authorized the Plan Committee to amend the plan as it saw fit, albeit with excep-

tions, but the exceptions did not require the committee's remaining the initiating body—and did not even require the committee's continued existence. Since the committee could thus have dissolved itself in favor of the Compensation Committee without violating the plan, the nonexistence of the Plan Committee was no bar to the decision in 2012 to grant shares from the 2003 plan to CEO Hamburger.

The district judge dismissed the suit on the ground that the plaintiff had failed to make a demand on the corporation to correct what she contends was a violation of Delaware law in awarding Hamburger extra shares under the 2003 incentive plan. Such a demand is required by Delaware law unless it would be futile, which in this context means that "particularized facts have been alleged to create a reasonable doubt either that '(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" *Friedman v. Khosrowshahi*, No. 9161–CB, 2014 WL 3519188, at *9 (Del. Ch. July 16, 2014), quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984); see also *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008); *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000); *Westmoreland County Employee Retirement System v. Parkinson*, 727 F.3d 719, 724–26 (7th Cir. 2013). Neither futility condition was satisfied. There is no doubt either that the directors who approved the Compensation Committee's recommendation were disinterested or that the recommendation was the product of a valid exercise of business judgment. Notice that this is just a roundabout way of saying that the administration of the 2003 plan by the Compensation Committee, given the nonexistence of the Plan Committee designated in that plan, was not "a clear or intentional violation of a compensation plan," *Friedman v. Khosrowshahi, supra*, 2014 WL

3519188, at *12, and the Compensation Committee's devia-
tion from the literal terms of the plan was, as we said, at
worst a harmless error, though more likely no error at all.
Literalism is not the only valid method of interpreting con-
tracts (and sometimes it is invalid, because it can produce
unforeseen absurdities).

For completeness we'll comment briefly on another of
the district judge's rulings—his denial of a motion by Milton
Pfeiffer to intervene as a plaintiff. Pfeiffer, like Donnawell a
stockholder of DeVry Education Group though he owned
only one share, worth no more than $50, had filed a stock-
holder derivative suit, very similar to the present one, in Illi-
nois state court. The suit was dismissed as moot when the
company corrected the errors in its administration of the
2005 plan, which was before Donnawell had amended her
complaint in the present case to challenge the award of stock
options to Hamburger under the 2003 plan. Although it
dismissed the suit, the Illinois court awarded Pfeiffer non-
trivial attorney's fees on the ground that his suit had alerted
the company to the errors in the administration of the 2005
plan, leading the company to correct them. One might there-
fore have thought Pfeiffer an appropriate intervenor in the
present case. But the district judge denied the motion on the
ground that Pfeiffer's claim was identical to Donnawell's
and Donnawell was adequately representing his legal inter-
est, and so allowing him to intervene would add nothing.
Donnawell was dismissed from the case because of her fail-
ure to make the required demand on the board of directors,
and her dismissal left no one to represent the interest of oth-
er shareholders except Pfeiffer. Yet as the district judge not-
ed, Pfeiffer, like Donnawell, had failed to make a demand on

the board—and in any event has not appealed the denial of his motion for leave to intervene.

The judgment dismissing the suit and denying Pfeiffer's motion to intervene is

AFFIRMED.